UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
_____

JACQUELINE LEE AMAN,

                                    Plaintiff,

                                                                        DECISION AND ORDER

                                                                        12-CV-6520L

                    v.

CAROLYN W. COLVIN, Acting Commissioner of
Social Security,[1]


                                    Defendant.
_____


        Plaintiff appeals from a denial of disability benefits by the Commissioner of Social Security

("the Commissioner").  The action is one brought pursuant to 42 U.S.C. § 405(g) to review the final

determination of the Commissioner.

        On September 28, 2009, plaintiff, then 48 years old, filed applications for disability

insurance and Supplemental Security Income ("SSI") benefits under Title II of the Social Security

Act.  Plaintiff alleged an inability to work since August 1, 1996, due to depression and psychosis.

(T. 113).  Her application was initially denied.  Plaintiff requested a hearing, which was held on

March 3, 2011 before Administrative Law Judge ("ALJ") Michael W. Devlin.  (T. 12).  The ALJ

issued a decision on April 5, 2011, concluding that plaintiff was not disabled under the Social

---

[1] Plaintiff's complaint names former Commissioner of Social Security Michael J. Astrue as the defendant.
Carolyn W. Colvin, the current Acting Commissioner, automatically is substituted as the defendant pursuant to Fed. R.
Civ. P. 25(d)(1).

Security Act.  (T. 12-22).  That decision became the final decision of the Commissioner when the Appeals Council denied review on August 7, 2012.  (T. 1).  Plaintiff now appeals from that decision.  The Commissioner has moved (Dkt. #6), and the plaintiff has cross moved (Dkt. #8) for judgment on the pleadings pursuant to Fed. R. Civ. Proc. 12(c).


DISCUSSION

Determination of whether a claimant is disabled within the meaning of the Social Security Act requires a five-step sequential evaluation.  *See Bowen v. City of New York*, 476 U.S. 467, 470-71 (1986).  *See* 20 CFR §§404.1509, 404.1520.  If the ALJ concludes that the claimant is not engaged in substantial gainful employment and suffers from a severe impairment, he then examines whether the claimant's impairment meets or equals the criteria of those listed in Appendix 1 of Subpart P of Regulation No. 4.  If the impairment does so, and has continued for the required duration, the claimant is disabled.  If not, analysis proceeds and the ALJ determines the claimant's residual functional capacity ("RFC"), which is the ability to perform physical or metal work activities on a sustained basis, notwithstanding limitations for the collective impairments.  *See* 20 CFR §404.1520(e), (f).  If the claimant's RFC permits him to perform relevant jobs he has done in the past, he is not disabled.  If not, analysis proceeds to the final step, and the burden shifts to the Commissioner to show that the claimant is not disabled, by presenting evidence demonstrating that the claimant "retains a residual functional capacity to perform alternative substantial gainful work which exists in the national economy" in light of his age, education, and work experience.  *See Rosa v. Callahan*, 168 F.3d 72, 77 (2d Cir.1999), *quoting Bapp v. Bowen*, 802 F.2d 601, 604 (2d Cir.1986).  *See also* 20 CFR §404.1560(c).

The Commissioner's decision that a plaintiff is not disabled must be affirmed if it is supported by substantial evidence, and if the ALJ applied the correct legal standards. *See* 42 U.S.C. § 405(g); *Machadio v. Apfel*, 276 F.3d 103, 108 (2d Cir.2002). Substantial evidence is defined as "more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (quoting *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938)). "The Court carefully considers the whole record, examining evidence from both sides 'because an analysis of the substantiality of the evidence must also include that which detracts from its weight.'" *Tejada v. Apfel,* 167 F.3d 770, 774 (2d Cir. 1998) *quoting Quinones v. Chater*, 117 F.3d 29, 33 (2d Cir.1997). Nonetheless, "it is not the function of a reviewing court to decide *de novo* whether a claimant was disabled." *Melville v. Apfel*, 198 F.3d 45, 52 (2d Cir.1999). "Where the Commissioner's decision rests on adequate findings supported by evidence having rational probative force, [this Court] will not substitute our judgment for that of the Commissioner." *Veino v. Barnhart*, 312 F.3d 578, 586 (2d Cir.2002).

ALJ Devlin's decision recites detailed findings of fact and recites the bases upon which they rest. Upon careful review of the complete record, I believe that the ALJ applied the correct legal standards, and that his finding that plaintiff is not totally disabled is supported by substantial evidence.

After initially concluding (solely for purposes of plaintiff's application for disability insurance benefits) that the plaintiff had not suffered from an impairment prior to her date last insured, the ALJ proceeded to examine plaintiff's application for SSI. He summarized plaintiff's medical records, particularly with respect to depressive disorder and anxiety disorder, which he determined together constituted a severe impairment not meeting or equaling a listed impairment. I believe the evidence supports the ALJ's conclusion that plaintiff, then a forty-eight year old woman

with a limited education and past employment as a waitress and house cleaner, was not totally disabled, due to the ALJ's finding at step five that several positions existed in the economy that plaintiff could perform, including laundry laborer and industrial cleaner.

### I.        Plaintiff's Exertional Limitations

In determining plaintiff's RFC, the ALJ considered the medical record with regard to plaintiff's exertional limitations, which included treatment notes for low back pain, nausea, fatigue and headaches, without any evidence of resulting limitations.  Based on this evidence, the ALJ determined that plaintiff retained the RFC to perform a full range of work at all exertional levels.  I find that this determination is supported by the substantial evidence cited by the ALJ, and plaintiff does not appear to take issue with this portion of the ALJ's determination.

### II.       Plaintiff's Non-Exertional Limitations

In assessing plaintiff's non-exertional limitations, the ALJ explicitly applied what is generally referred to as the "special technique," prescribed for the evaluation of non-exertional impairments in adults at Steps 2 and 3 of the ALJ's analysis.  The special technique requires an ALJ to assess four categories of functionality: "activities of daily living; social functioning; concentration, persistence, or pace; and episodes of decomposition."  20 C.F.R. §§404.1520a(c)(3), 416.920a(c)(3).  Impairment in the first three categories must be ranked as "none, mild, moderate, marked" or "extreme," and the number of episodes of decomposition must be ranked as "none, one, two" or "three or more."  The ALJ must document his analysis of the process in order to "reflect application of the technique, and . . . must include a specific finding as to the degree of limitation in each of the functional areas."  *Kohler v. Astrue*, 546 F.3d 260, 266 (2d Cir. 2008) (internal

quotations omitted).  A finding of "mild" or less in the first three categories, coupled with a finding of "none" in the final category and the absence of contrary evidence, directs the conclusion that a claimant's mental impairment is *not* severe.  20 C.F.R. §404.1520a(d)(1).  If the finding indicates a greater degree of limitation, the claimant will be deemed to have a severe mental impairment, and if that impairment neither meets nor equals a listed impairment, the ALJ will proceed to determine the claimant's RFC.  20 C.F.R. §404.1520a(d)(3).

Applying the special technique, the ALJ determined that plaintiff was mildly restricted in activities of daily living, had moderate difficulties in social functioning, experienced moderate difficulties in concentration, persistence or pace, and had experienced only one or two appreciable episodes of decompensation, triggered by failure to take prescribed medications.   (T. 17).

Concluding that plaintiff's severe mental impairment did not meet or equal a listed impairment, the ALJ proceeded to Step 4 of the analysis, the determination of plaintiff's RFC, and based on consideration of plaintiff's treatment records, opined that plaintiff had the RFC to perform work at all exertional levels, with the following nonexertional limitations: ability to understand, remember and carry out simple instructions and tasks, ability to interact appropriately with co-workers and supervisors on a consistent basis, ability to work in proximity to but not in conjunction with coworkers, little or no contact with the general public, ability to sustain sufficient and concentration and focus up to two hours at a time, and ability to maintain regular and continuing employment, eight hours per day, five days per week, or an equivalent schedule.

Initially, Plaintiff contends that the ALJ erred when he found, in connection with her application for disability insurance benefits, that she had not suffered from a medically determinable impairment prior to June 30, 1998, the date she was last insured.  I find that the ALJ's determination in this regard is supported by substantial evidence.  The record reflects that during the insured

period, plaintiff was seen intermittently by a mental health therapist, Kathy Granita ("Granita"). Granita began treating plaintiff in 1996, and observed that plaintiff experienced psychological difficulties only when she failed to take prescribed medication, and that plaintiff had otherwise "made a lot of progress" addressing her initial diagnoses of anxiety, depression and paranoia.  (T. 436, 481-83).   Notwithstanding the fact of plaintiff's diagnoses, there is no evidence of record suggesting that plaintiff's depression, anxiety and/or paranoia were severe or expected to last more than 12 months, let alone that they rendered her disabled.  To the contrary, the record suggests that plaintiff's treatment and medication were highly effective in mitigating plaintiff's symptoms. Granita summarized her treatment history with plaintiff by stating that, "Cl[ient] decompensates when she stops meds.  Once she starts meds again she quickly recovers and become[s] fully competent and capable – 1996 was [the] first time she presented: last presentation was 9/09 and case closed 7/10 after several months of no mental health issues."[2] (Tr. 482).

Plaintiff also contends that the ALJ's RFC finding is not supported by substantial evidence, and thus formed an inaccurate basis upon which the VE could testify.  First, plaintiff suggests that it was "internally inconsistent" for the ALJ to have found that the plaintiff could interact appropriately with coworkers, and that she could work "in proximity to but not in conjunction with coworkers." (T. 18).  I find that this RFC is not internally inconsistent, and the record supports the ALJ's conclusion that plaintiff could relate appropriately to coworkers and work in proximity to them, while nonetheless avoiding work undertaken in conjunction or combination with coworkers.

---

[2] To the extent that plaintiff claims that the ALJ make insufficient efforts to obtain records from Livingston County Mental Health, the facility at which plaintiff allegedly treated with Granita, there is no evidence that any additional records remained to be produced.  The Commissioner apparently made repeated attempts to determine whether the facility had additional records, and on or about November 30, 2009, Granita informed the Social Security Administration that the treatment history summary she had sent was all that she was able to produce, and that she had nothing more to add.  In addition to that summary, the record contains Granita's mental health RFC assessment for plaintiff, which also purports to summarize plaintiff's treatment history.  In short, it appears that the Commissioner obtained all that there was to obtain, and plaintiff's contentions that more records existed, or that such records, if they did exist, would have supported her claim of disability, are wholly speculative.

Plaintiff also faults the ALJ for failing to give controlling weight to the opinions of Dr. Christine Ransom, a consulting physician who examined plaintiff in connection with a prior application for Social Security benefits, and Dr. H. Tzetzo, a reviewing physician who submitted a report in connection with that earlier application.[3]  These physicians had no ongoing treatment relationship with plaintiff and did not render opinions concerning plaintiff's limitations during the time period relevant to her instant applications for benefits, and as such, the ALJ was under no obligation to afford them controlling weight.  In any event, neither doctor opined that plaintiff was disabled, and the RFC as determined by the ALJ is generally consistent with their opinions.  (T. 290-293, 294-310).

Finally, plaintiff maintains that the ALJ failed to properly assess her credibility and/or that of her husband, who also testified at the hearing, and thus failed to grant sufficient weight to plaintiff's subjective complaints of disabling depression and anxiety, including difficulty leaving the house and inability to maintain friendships, which allegedly rendered her incapable of working with or near others.  As the ALJ noted, however, the testimony by plaintiff and her husband that she was virtually inactive and immobile, and unable to maintain relationships with others, were inconsistent with plaintiff's self-reports of leaving the house nearly every day to grocery shop or perform other errands, and her engagement in cooking, cleaning, driving, home decorating and spending time with family.  In fact, in describing the basis for *her opinion that plaintiff's mental health issues posed no limitations whatsoever*, Granita cited plaintiff's reported activities of daily living: "has been working as a waitress – often cares for grandchildren for extended lengths of time – shops often, drives self for shopping and all [appointments], decorates home often, was caring for ill mother."

---

[3] To the extent plaintiff is seeking the reopening of her prior application, no such request has been made on the record, and plaintiff has made no showing that the Court has the authority to grant such relief.

(Tr. 481).   The interpersonal and social limitations plaintiff and her husband described is also inconsistent with observations by plaintiff's treating and examining physicians that she was consistently cooperative, well-dressed and groomed, and that her social interactions were pleasant and entirely appropriate.  (Tr. 260, 438-439).

Overall, I find that the record simply does not support plaintiff's claim of total disability.  As such, I concur with the ALJ and conclude that there is substantial evidence to support his determination of plaintiff's residual functional capacity.   There is no dispute that the positions identified by vocational expert Julie Andrews at the plaintiff's hearing – laundry laborer and industrial cleaner – are consistent with this RFC, as well as with plaintiff's age, educational background and past work experience.  As such, I find no reason to modify the ALJ's decision.

CONCLUSION

The Commissioner's motion for judgment on the pleadings (Dkt. #6) is granted, and plaintiff's cross motion for judgment on the pleadings (Dkt. #8) is denied.  The Commissioner's decision that plaintiff was not disabled is in all respects affirmed, and the complaint is dismissed.

IT IS SO ORDERED.

_____
DAVID G. LARIMER
United States District Judge

Dated: Rochester, New York
        September 11, 2014.